## THE HERKIMER MANUFACTURING AND HYDRAULIC COMPANY *vs.* SMALL.

Where an *incorporated company*, the capital stock of which is divided into shares, are authorized by their act of incorporation to make *calls* upon the stockholders for the payment of the sums by them respectively subscribed, in such proportions and at such times as the directors see fit, *under penalty of forfeiture* of the shares subscribed and of the previous payments made thereon, the company may, in case of non-payment, *proceed by suit* to recover the amount of the calls, or *may declare a forfeiture of the stock.*

So even *after suit brought,* they may declare a forfeiture of the stock, and such latter proceeding cannot be pleaded in bar of the *further maintenance of the suit,* where the value of the stock forfeited is not equal to the money due to the company. The stockholder, however, is entitled in such case, on the assessment of the damages, to insist that the *value of the stock* forfeited shall be allowed in mitigation or diminution of the sum which the plaintiffs would otherwise be entitled to recover.

Where the stock forfeited is equal in value to the money which may be demanded by the company, the forfeiture may be pleaded in bar ; but a plea of forfeiture without such averment of value is bad.

*It seems* that *payment* may be pleaded to part of a count, and the *general issue* as to the residue.

Where by the rules of pleading a defendant cannot plead matter which yet is essential to his defence, he may give it in evidence either to *defeat* or *mitigate* the plaintiff's claim. Under this rule any matter, whether *it arise* before or after suit brought, which is in its own nature admissible but can not be pleaded, may be given in evidence on the general issue or on the execution of a writ of inquiry.

DEMURRER to plea. The plaintiffs declared on subscriptions for stock made by the defendant. The plaintiffs are an *incorporated company.* The defendant subscribed for 21 shares of $100 each, upon which stock, calls were made to the amount of *ninety per cent.* and for the non-payment of which, upon the shares owned by the defendant, this action was brought. The facts were set forth in various forms in *five* separate counts of the declaration, which also contained a *sixth* count of *indebitatus assumpsit,* in which the plaintiffs demanded $3000, for money lent and advanced, paid, laid out and expended, and had and received, " and for other money then and there owing from the said defendant to the said plaintiff for twenty-one shares of stock of the capital stock of the said Herkimer Manufacturing and Hy-

draulic Company before that time sold to the said defend-
ant by the said plaintiffs." · The suit was commenced on
the 19th *December*, 1834. The defendant *pleaded*, 1. *non
assumpsit*, and 2. as to the first, second, third, fourth and fifth
counts, and *as to so much of the sixth count* as relates to his
subscription for shares of the capital stock of the company,
by leave, &c. he says that the plaintiffs *ought not further to
have or maintain their aforesaid action*, &c. because he says
that by the act of incorporation of the company the direc-
tors are authorized to make *calls* for payments upon subscriptions to be made by the subscribers to the stock of the
company, *under penalty of forfeiture* of shares and of previous payments made ; that calls were duly made as set
forth in the several counts of the declaration, and that he,
the defendant, having neglected to make the payments re-
quired to be made by him, the directors of the company for
the time being, on the 22d *June*, 1836, *after the commence-
ment of this suit*, in pursuance of the provisions of the act
of incorporation, made an order declaring the several shares
of stock subscribed for by him and all payments made thereon
*forfeited*, for the non-payment of the instalment which, on
the *last call* for stock payments, was payable on 15th
May, 1835 ; by reason whereof the several shares of stock
subscribed for by him *became and were forfeited*, and he
thereby became and was discharged from the several con-
tracts in the several counts of the declaration mentioned, con-
cluding with a verification and prayer of judgment. To this
second plea the plaintiffs demurred.

*J. A. Spencer*, for the plaintiffs.

*M. T. Reynolds*, for the defendant.

*By the Court*, COWEN, J. It is objected that the plea
does not even profess to answer the whole of the sixth count,
nor does it aver such a notice of a call for the 15th of May as
shows the forfeiture to be regular ; and several other formal
objections are made, which it is not necessary to consider, for
we are satisfied that the principle on which the pleader re-
lied is unsound.

The plea concedes that when the suit was commenced, the plaintiffs had a good cause of action. The defendant had promised to pay, which he had refused to do after demand and notice. This, it is true, was in consideration of the shares of stock to which he entitled himself by his subscription; and it is equally true they have become forfeited. The consideration is gone; but it is by his own default. The power given by the legislature was a concurrent remedy, the effect of enforcing which is well understood. The act, Statutes, sess. of 1833, p. 192, § 4, under which the defendant subscribed, declares that "it shall be the duty of the directors for the time being to call for and demand of the stockholders respectively, all such sums of money by them subscribed, at such times and in such proportions as they shall see fit, under penalty of forfeiture to the said company of their shares and all previous payments made thereon, always giving thirty days notice, to be published in a newspaper printed in the county of Herkimer, and in the state paper, of such call or demand." This clause has long prevailed in our acts of incorporation, and there have been several adjudications upon its effect. The 13th section of the New Lebanon and Hudson Turnpike act, in K. &. R.'s revision of the laws published in 1801, 2 vol. p. 469 to 475, has been followed by the act in question. That section was considered by the supreme court in *Union Turnpike Co.* v. *Jenkins,* 1 Caines' R. 381, where the provision is also recited at large, and afterwards in the same case on error, 1 Caines' Cas. in Errror, 86, A. D. 1803. These decisions left it doubtful whether a proceeding under the clause of forfeiture were not the *sole remedy,* till, in 1812, this court considered it as standing clear of that question, and held that an action lay on such a subscription. *Goshen Turupike Co.* v. *Hurtin,* 9 Johns. R. 217. This has ever since been regarded as the settled doctrine, see *Highland Turnpike Co.* v. *McKean,* 11 Johns. R. 89, *Dutchess Cotton Manufactory* v. *Davis,* 14 id. 238, and places the proceeding in question on the precise footing of other cumulative remedies provided for by the agreement of the parties. It is the same as if the defendant had, in addition to the promise

of payment, agreed that, on default, the directors of the company should have power to declare the forfeiture of the stock ; in other words, that the company might resume their title to the stock sold. The effect of such a proceeding is perfectly well settled in every other department of business. When the mortgagee of real or personal estate takes the thing pledged and sells it, or finally converts it to his own use, he is paid so much only towards his debt as the thing *sold for*, or *was worth* at the time of the conversion. *Globe Ins. Co.* v. *Lansing*, 5 Cowen, 380. *Lansing* v. *Goelet*, 9 id. 346, 352, 353. *Spencer* v. *Ex'rs of Harford*, 4 Wendell, 381. *Case* v. *Boughton*, 11 id. 106. And where the equity of redemption is released, or a strict foreclosure resorted to in any form, then so much is paid as the value of the thing mortgaged, at the time when the title becomes absolute in the mortgagee amounts to. *Spencer* v. *Ex'rs of Harford*, 4 Wendell, 381. *Morgan* v. *Plumb*, 9 id. 287. This doctrine is very clearly laid down and traced to its consequences, by Chief Justice Savage, who delivered the opinion of the court in the cases last cited, and several previous authorities are referred to by him. The decisions relate mainly, if not exclusively, to real estate ; but the principle is the same in regard to personal, when the foreclosure is complete, as by sale or release of the equity of redemption, or, as was directly held in *Case* v. *Boughton*, by taking possession of a mortgaged chattel after the forfeiture for non-payment, and holding till a sale may be effected. See also per Nelson, J. 12 Wendell, 62, 63. If the value of the thing be less than the debt, the debt is not extinguished by the foreclosure, except when the mortgage or other pledge stands as the sole security. Jones, Chancellor, in *Lansing* v. *Goelet*, 9 Cowen, 352, 353. *Andover and Medford Turnpike Co.* v. *Gould*, 6 Mass. R. 40. *The same* v. *Hay*, 7 id. 106.

The case at bar was likened, on the argument, to an entry by the lessor for condition broken, which was said to extinguish a covenant to pay rent. But the contrary has been adjudged as to rent which accrued before re-entry, although the indenture of lease provided that the lessor un-

der such re-entry was to have the premises again, " as if the indenture had never been made." *Hartshorne* v. *Watson*, 4 Bing. N. C. 178.

It follows that the forfeiture of the stock in the case at bar, which is but another name for foreclosure, was not necessarily an extinguishment. The plea, then, is the same in effect as that in *Spencer* v. *Ex'rs of Harford*, wherein a plea that the plaintiff had acquired the equity of redemption in premises mortgaged, as a collateral security to his bond, was held bad, as being but an answer to part of the action for want of an averment that the acquisition was, at the time, equal to the amount due on the bond. According to the rules of pleading adopted in this court, nothing can be pleaded which is not an answer to the whole declaration or some count in the declaration. *Hicok* v. *Coates*, 2 Wendell, 419. And the plea must be sufficient in itself. It cannot be helped by another distinct pleading, though several pleas may have the effect of one. Thus, the general issue, may be pleaded to part of a declaration or count, and payment to the residue ; and where the defence is known to be in truth complete, it is right to plead in that way. If it be incomplete, yet this shall not prejudice the defendant; for where he cannot plead the matter, he may give it in evidence, either to defeat or mitigate the plaintiff's claim according to its effect. Lord Coke, after mentioning several cases wherein a defence must be pleaded, adds, all that hath been said must be taken with the caution, "that whensoever a man cannot have advantage of the special matter by way of pleading, there he shall take advantage of it in the evidence." Co. Litt. 283, *a*. This is, in general, the proper course where the matter is but a partial defence ; for, though it may be set up in connection with a denial of the residue or other supposed matter which is special, yet the plea as to the residue would be untrue ; and no man is bound to plead a false plea, which, in most cases, would be stricken out on motion, with costs; and is many times contrary to professional morality.

It is matter of common experience within the rule mentioned by Lord Coke, both on the general issue and after judgment by default, that any matter, whether it arise be-

fore or after suit brought, which is in its own nature admissible, is received in evidence on the trial, or before the sheriff, on executing a writ of inquiry.    In *trover*, for goods, says Buller, J., N. P. 299, the defendant may give in evidence that he took them for toll, on the plea of not guilty, because he could not plead it specially, as he might in trespass.    So, doubtless, he might show on the same issue, or on executing a writ of inquiry, that the plaintiff had received back the goods either in trover or trespass; for this, though it could not be pleaded in bar, would yet go in mitigation of damages·

In the case before us, the company have, according to the plea, thought proper, pending the suit, to declare a forfeiture of the defendant's stock; and if they have derived any pecuniary advantage from such a proceeding, the defendant should have the benefit of it.    Such is the plain justice of the case. The real cash value of the stock at the time when it was declared forfeited, should be deducted from the nominal value, and the verdict be for the balance.    Thus, if the stock were at par, the damages should be nominal, or at most for the interest to the time of forfeiture, on the shares in demand; if 50 per cent. below par, then the plaintiffs should recover but 50 per cent. with interest, the jury having regard to the cash value of the stock, supposing it to have been re-issued within a reasonable time after the company had resumed it.    In short, the measure of damages is like that on a failure to take and pay, under a sale at auction.    If the value obtained, or which might be obtained on a re-sale, be short of the sum bid upon the first sale, the vendor may recover the deficiency, with other damages which he has sustained by the default. Babington on Auctions, 138, 139.

The plea is overruled, because it does not aver that the value of the stock forfeited was equal to the nominal value of the stock subscribed, with interest to the time when the resolution was passed.    Could that averment be maintained, it would, we think, constitute a perfect defence, within the principle of *Case v. Boughton.*

Judgment for plaintiffs on demurrer; leave to amend on payment of costs.