By the Court, Bronson, J.
I still adhere to the opinion already expressed, (1 Hill, 497,) that it is the policy or contract of insurance, and not the subject insured, which the parties have declared not assignable. It is undoubtedly true that “ the interest of the assured,” when the words are used without any qualification, usually means his interest in the property or thing insured. But here the parties have explicitly declared that they mean something else—“ the interest of the assured in this policy is not assignable.”
It is now said that, as the plaintiff in his written application for insurance expressed the wish- to assign, and as the policy was subsequently issued referring to the application, the company has, in effect, consented in writing—that is, by the policy—■ to an assignment. But the language of the policy is, not that you may, but that you shall not assign without the consent of the company. The most that can fairly be inferred from the issuing of the policy with the knowledge that the plaintiff wished to assign is, that the defendants were ready to consent to an assignment to the mortgagee on the terms mentioned in their by-laws; that is, “ on his signing the premium note, or giving security for the payment of the same.” Before the loss happened, the mortgagee did not think proper to take on himself the burden of the contract by signing the premium note, and he cannot complain if the defendants now insist that the contract is at an end.
The remaining argument for the plaintiff presents a question which was not before in the case. It is said that the defendants, by making and collecting assessments upon the premium note after they had notice of the assignment of the policy, have *511 waived the forfeiture, and affirmed the continuance of the contract. And this is likened to the case where a landlord, after notice of some act or omission by his tenant which gives a right of re-entry, receives or distrains for the subsequently accruing rent, or does some other act by which he plainly affirms the continuance of the lease. This is held to be a waiver of the forfeiture. But this doctrine only applies where the act or omission of the tenant renders the lease voidable, and not where it is declared absolutely void on the happening of the particular event. The distinction is between cases where the landlord may put an end to the lease by an entry for the wrong done, and those where the wrong terminates the lease without any act on the part of the landlord. In the former case, the landlord may waive the forfeiture by any act which affirms the continuance of the tenancy ; but in the latter, the lease being ipso facto void is incapable of confirmation. (Pennant’s case, 3 Co. 64, third resolution ; Finch v. Throckmorton, Cro. Eliz. 221 ; Mulcarry v. Eyres, Cro. Car. 511 ; Anon., 3 Salk. 4. And see Co. Litt. 295, b. ; Rickman v. Garth, Cro. Jac. 173 ; Jones v. Verney, Willes’ Rep. 169, 176, 177 ; Jenkins v. Church, Cowp. 482 ; Doe v. Watts, 7 T. R. 79 ; Doe v. Rees, 4 Bing. N. C. 384 ; Goodwright v. Davids, Cowp. 803.) How in this case the provision is, that on assigning without consent “ this policy shall thenceforth be void and of no effect A The parties have in the strongest terms declared that the policy shall immediately, and without any act on the part of the company, become absolutely void; and it is difficult to see how any thing short of a new creation could impart vitality to this dead body.
We are also referred to cases where it has been held that the contract of an infant may be confirmed after he attains his majority. But with very few exceptions the contracts of infants are only voidable—not absolutely void ; and wherever the contract is good or bad at the election of the party, there is no difficulty in seeing that it may be ratified and confirmed.
But it is unnecessary to put this case upon the ground that *512 the forfeiture could not be waived. It does not appear that the assessments which the plaintiff has been required to pay on his premium note, were made on account of losses which have happened since the policy was assigned j, and consequently the defendants have not done an act which necessarily affirms the continuance of the policy. There is, perhaps, room for question whether the plaintiff did not continue liable upon his premium note to contribute to all losses which happened within the term for which he was originally insured, although the policy became void before the term ended. (See premium, note, ante, p. 509, in connection with Sess. L. of 1834, p. 530, ^2, 4, 7, 8,10 ; Herkimer M. & H. Company v. Small, 21 Wend. 275.) But however that may be, there can be no doubt that the plaintiff was liable to contribute to all losses which happened while the policy was in force, although the assessment should not be made until afterwards. He could not, by forfeiting the policy, discharge the existing liability to contribute towards losses which had already happened.-
The case then comes to this. The defendants proved, that before the property was destroyed, the plaintiff had done an act which put an end to the policy- In answer to this, the plaintiff undertook to show that the forfeiture had been waived. The burden lay upon him, and he was bound to make out a plain case. It was not enough to bring the matter into doubt. It was necessary to show that the company had done an act which plainly affirmed the continuance of the policy. An assessment for losses did not prove it, without showing that the losses happened after the forfeiture accrued, and there was no attempt to establish that fact. The judge was therefore right in holding that the plaintiff could not recover.
Nelson, Ch. J. and Cowen, J. being members of the company, gave no opinion.
New trial denied.